[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for dissolution of marriage and other relief brought to the Judicial District of Danbury.
Many of the facts that give rise to this action are not in dispute The plaintiff, whose maiden name was Susan Elizabeth Burnett, and the defendant, were married on December 7, 1969, in Reno, Nevada. The plaintiff has resided continuously in the State of Connecticut for at least twelve months immediately preceding the date the complaint was filed. The marriage between the parties has broken down irretrievably without any reasonable prospects of reconciliation. There are two children, issue of the CT Page 252-CC marriage, both of whom are now adults, Justin Ruttan and Evan Tyler Ruttan. No other minor children have been born to the plaintiff wife since the date of marriage of the parties, and neither party has received state assistance.
The parties are in dispute as to the cause of the breakdown of the marriage. From the evidence presented, the court finds that the major cause of the breakdown of the marriage is the defendant's adulteress relationship with another woman who he continues to live with at the present time. The defendant first became sexually active in August, 1993, with the woman he is now living with. The parties also had problems with communication with each other.
The plaintiff is in good health.
The plaintiff graduated from the University of California at Berkeley.
The plaintiff is presently employed by the Brewster Central School District as a teacher. Her gross weekly income is $1,172.34. Her annual income is $60,961. She has not had any salary increases in the past two years. Her net weekly income is $483.06.
The plaintiff owns a 1995 Subaru with a value of $10,000, a CT Page 252-DD loan balance of $8368.98, and an equity of $1631.02. She owns a one-half interest in the camper, which one-half interest amounts to $375. She has bank accounts totaling $21,974.10. She has stocks with a value of $2600. She also owns a time-share with the defendant in Cancun with a total value of $8000. She has liabilities consisting of a personal loan against her New York State retirement of $9144.91, as well as attorney's fees.
When the parties married, they had more debts than assets.
The parties resided in Chico, California, when they were married. The plaintiff had already received her B.A. degree and was pursuing a degree in teaching. The defendant was teaching in California at the time the parties married. He had not received his teaching degree and it was not required at that time.
Approximately one year after the parties married, they left California and moved to the East Coast. They initially resided with the plaintiff's parents for approximately one year in New York State. After residing with her parents for approximately one year, they rented a small cottage in Carmel, New York, where they remained for approximately one year. They then purchased a home in Lake Carmel, New York. The home was not winterized and needed a substantial amount of renovations. They remained in that home for ten to eleven years. The parties totally stripped the inside CT Page 252-EE of the house to the shell and rebuilt it.
Both parties worked in renovating the home.
The parties moved from New York to New Fairfield, Connecticut, in 1985. The plaintiff was still employed at the parochial school at the time of this move. The children were approximately seven and nine years old at the time of the move. At the present time, the family home is under contract of sale. The defendant vacated the family home in early November of 1994.
There is a closing scheduled on the family home for January 30, 1997. The plaintiff has a tentative place to move to after the closing at a rental of $1100 a month, plus utilities, commencing February 1, 1997.
When the oldest child Justin was born in March, 1976, the parties agreed that since the defendant had a better paying job than the plaintiff, and that the plaintiff should remain at home to raise the child. The youngest child, Evan Tyler, was born July 17, 1978. The plaintiff did not return to full-time work until Tyler was almost in kindergarten. She did do some home tutoring for the Carmel School District prior to the time Tyler entered kindergarten. When the defendant was not at work, he shared equally with the plaintiff in the responsibility of raising the CT Page 252-FF children prior to the time she returned to full-time work.
The plaintiff commenced employment teaching at a parochial school in 1983. At that time, she had a provisional teaching certificate and had five years in which to get a teaching certificate and master's degree. She remained at the parochial school for five years until she obtained her teaching certificate and master's degree.
The plaintiff obtained her master's degree and permanent teacher's certificate in 1988.
Following graduation from college at the University of California at Berkeley and moving east, the plaintiff was employed at a plant research facility in Yonkers, New York, from the summer of 1968 to the summer of 1969. This was prior to the time the parties married. She then returned to California and enrolled in teaching courses with the intention of obtaining her teaching degree. After the parties moved to New York, the plaintiff obtained her first employment as a teacher's aide, where she remained for approximately one year.
The plaintiff was then employed at Reader's Digest for approximately four years on an on-again off-again basis. While employed at Reader's Digest, she held three separate positions. CT Page 252-GG She obtained her master's degree and teaching certificate in 1988. Her last year, working in the parochial school system, resulted in annual earnings of approximately $20,000. Her first year, working in the Brewster school system, had an annual salary of approximately $30,000. She will continue to receive step increases for the next four to five years at her present employment, with each step increase resulting in an annual salary increase of $1500. She can also take an additional thirteen credits for which she would receive compensation.
The defendant is in Good health.
The defendant's current gross annual salary is $85,617. His gross weekly income is $1646.48. His net weekly wage is $1111.86. He owns a 1993 Chevrolet with a value of $8000, a loan balance of $4800, and an equity of $3200. He owns a 1990 Subaru with a value of $6500, and no loan balance. He has bank accounts totaling $21,535.16. He has a 401K plan with an estimated value of $7000. He owns a 1986 camper with a one-half interest value of $375. He has liabilities for legal fees as well as a GM Mastercard and Bank One VISA.
The plaintiff and the defendant discussed the issue of the defendant's retirement. He has always wanted to retire at age fifty-five.
The present value of the defendant's defined pension benefit CT Page 252-HH plan for which he is vested is $439,259.01. The present value of the plaintiff's defined benefit pension plan is $29,015.83. The plaintiff commenced employment with the Brewster Central School District on September 1, 1988. She will not be vested until she is fifty-five years old, and has ten years of service. She was born on October 13, 1946, and is fifty years old. Her plan is a contributory plan. The plaintiff will not be vested in her plan until she has at least ten years of credited service. The defendant commenced employment with the Chappaqua School District on September 1, 1970. He became vested in the retirement plan after ten years of full-time service which was on September 1, 1980. His annual retirement benefit is $42,632.96, with a monthly benefit of $3552.75.
The defendant would be eligible to retire as of today's date, but would not commence to receive his pension pay until age fifty-five. He was born on December 12, 1944.
This court has considered the provisions of § 46b-82
regarding the issue of alimony, and has considered the provisions of § 46b-81 (c) regarding the issue of property division, and has considered the provisions of § 46b-62 regarding the issue of attorney's fees. The court enters the following orders.
ORDERS
CT Page 252-II
A. BY WAY OF DISSOLUTION
The marriage between the parties is dissolved, and each party is declared to be single and unmarried.
B. BY WAY OF ALIMONY
1. The defendant is ordered to pay to the plaintiff alimony in the amount of $190 weekly.
2. The provisions of § 46b-86 (a) and § 46b-86 (b) are applicable.
3. The retirement by the defendant at or after age fifty-five shall not be considered a voluntary reduction of earnings by him.
4. The retirement by the plaintiff at or after age sixty-two shall not be considered a voluntary reduction of earnings by her.
C. BY WAY OF PROPERTY ORDERS
1. The family home located at 14 Pheasant Drive, New Fairfield, Connecticut, has a fair market value based on the contract price of $202,200, and a mortgage of approximately CT Page 252-JJ $62,000. The family home is to be sold, and the net equity divided equally between the parties. The net equity is the sale price, less the mortgage, less any real estate tax adjustments, less the payment of the closing attorney's fees, and less the payment of any other taxes that have to be paid, as well as any other usual closing costs. Between now and January 30, 1997, the plaintiff is responsible for keeping the mortgage current. After January 30, 1997, in the event the home is not sold, the plaintiff is responsible for keeping the mortgage current during the period of time that she continues to occupy the family residence. After January 30, 1997, during the period of time that she does not occupy the family residence, the parties are to divide equally all expenses including mortgage and repairs for the family home.
2. The 1993 Chevrolet and 1990 Subaru are awarded to the defendant. He is to pay the loan balance on the 1993 Chevrolet and hold the plaintiff harmless therefrom.
3. The 1995 Subaru, shown on the plaintiff's financial affidavit, is awarded to the plaintiff. She is to pay the loan balance and hold the defendant harmless therefrom
4. All bank accounts shown on the plaintiff's financial affidavit are awarded to the plaintiff. CT Page 252-KK
5. All bank accounts shown on the defendant's financial affidavit are awarded to the defendant.
6. The plaintiff has TSA stocks, bonds and mutual fund with a total value of $2600. That asset is ordered divided equally between the parties.
7. The defendant has a 401K plan with an approximate value of $7000. That plan is ordered divided equally between the parties.
8. The 1986 camper is awarded to the defendant.
9. All liabilities shown on the plaintiff's financial affidavit are to be paid by the plaintiff, and she is to hold the defendant harmless therefrom.
10. All liabilities shown on the defendant's financial affidavit are to be paid by the defendant, and he is to hold the plaintiff harmless therefrom.
11. The court enters the following order regarding the defendant's defined benefit pension plan:
(a). The defendant, Daniel J. Ruttan (hereinafter CT Page 252-LL referred to as "member"), is a member of the New York State Teachers' Retirement System (hereinafter referred to as "NYSTRS"). Member's date of birth is December 12, 1944.
 (b). The plaintiff, Susan E. Ruttan (hereinafter referred to as "alternate payee"), is the former spouse of member. Alternate payee's date of birth is October 13, 1946.
(c). Member's last known mailing address is:
 Daniel J. Ruttan 1004 Kingsway Carmel, New York 10512
(d). Alternate payee's last known mailing address is:
 Susan E. Ruttan 14 Pheasant Drive New Fairfield, Connecticut 06812
 It is the responsibility of alternate payee to keep a current mailing address on file with NYSTRS at all times.
 (e). At such time as member has retired from and is actually receiving a retirement allowance from the NYSTRS, CT Page 252-MM the said NYSTRS, in accordance with the Equitable Distribution Law, is directed to pay to the alternate payee a portion of the member's retirement allowance. Said portion is ascertained by redoing the allowance calculation that determined the member's retirement allowance, substituting the member's final average salary and total credited service as of the dissolution date in place of the member's actual final average salary and total credited service at retirement and multiplying the result by 50 percent. The term "retirement allowance," as used herein, shall be deemed to include any annuity as well as any supplemental retirement allowance which is paid by the said NYSTRS to member including any current or subsequent schedule or ad hoc increases. Any reduction to member's retirement allowance to provide the survivor option specified in paragraph (g) will also be applied in determining the alternate payee's option.
 (f). The equitable distribution portion of member's retirement benefit, as set forth in paragraph (e), shall be payable to alternate payee and shall commence as soon as administratively feasible on or about the date the member actually enters pay status and NYSTRS approves a Domestic Relations Order incorporating this stipulation and agreement, whichever is later.
(g). This order mandates the member must choose a CT Page 252-NN survivor option (as permitted by the NYSTRS) that ensures that the alternate payee (whoever member shall nominate as beneficiary or widow, if that term is more appropriate) will receive the amount as set forth in paragraph (e), adjusted as set forth below, as annuity to the alternate payee if predeceased by member.
 In addition, member shall execute to alternate payee an authorization, in a form acceptable to NYSTRS, which will authorize NYSTRS to release to alternate payee all information concerning member's retirement benefits.
 Any remaining or other death benefits may be paid to member's then spouse or other beneficiary as allowed under the NYSTRS.
 (h). It is specifically intended that nothing in this order shall in any way require the NYSTRS to provide any form, type or amount of benefit, or any option not otherwise provided under its terms, not otherwise available by law. The NYSTRS shall have no obligation or responsibility as a consequence of this action apart from the specific directions contained in this order.
(i). This order shall be approved, adopted and entered CT Page 252-OO as a Domestic Relations Order.
 (j). The Superior Court of Danbury shall retain jurisdiction to amend this Domestic Relations Order but only for the purpose of establishing it or maintaining it as a Domestic Relations Order provided, however, that no such amendment shall require NYSTRS to provide any type or form of benefit, or any option not otherwise provided by NYSTRS, and further provided that no such amendment or right of the court to so amend will invalidate this existing order.
 (k). Upon entry as a Domestic Relations Order, a certified copy of the Domestic Relations Order and any attendant documents shall be served upon NYSTRS immediately. The Domestic Relations Order shall take effect immediate upon NYSTRS approval and NYSTRS approval of any attendant documents and then shall remain in effect until further order of the court.
12. All of the plaintiff's interest in her pension plan is awarded to the plaintiff.
13. All of the plaintiff's interest in the Cancun time-share is awarded to the defendant. She is to execute whatever documents CT Page 252-PP are necessary in order for this order to become effective. The court retains jurisdiction over any disputes that may arise involving the nature of the documents to be executed.
14. All of the furniture and personal property located at the family residence is ordered divided equally between the parties. In the event the parties cannot agree on that division, then the court retains jurisdiction to determine that division.
D. BY WAY OF ATTORNEY'S FEES
1. No attorney's fees are awarded in favor of either party.
E. MISCELLANEOUS ORDERS
1. Counsel for the plaintiff is to prepare the judgment within thirty days and send it to counsel for the defendant for signature and filing.
Axelrod, J. CT Page 252-QQ